UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JILL HAUGHIE,

    Plaintiff,

v.                                                             Case No: 2:16-cv-770-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## OPINION AND ORDER

Before the Court is Plaintiff Jill Haughie's Complaint (Doc. 1) filed on October 17, 2016. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §§ 423(d)(2),

1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911. Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

### B. Procedural History

On May 10, 2013, Plaintiff filed an application for disability insurance benefits. (Tr. at 90, 185-86). Plaintiff asserted an onset date of July 8, 2012. (*Id.* at 185). Plaintiff's application was denied initially on August 13, 2013 and on reconsideration on October 4, 2013. (*Id.* at 90, 106). A hearing was held before Administrative Law Judge ("ALJ") Marty Turner on January 26, 2015. (*Id.* at 31-79). The ALJ issued an unfavorable decision on March 24, 2015. (*Id.* at 12-26). The ALJ found Plaintiff not to be under a disability from July 8, 2012, through the date of the decision. (*Id.* at 26).

On August 12, 2016, the Appeals Council denied Plaintiff's request for review. (*Id.* at 1-5). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on October 17, 2016. This case is ripe for review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 12).

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[1] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment;

---

[1] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

(3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through June 30, 2015. (Tr. at 14). At step one of the sequential evaluation, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following period: October 2012 through March 2013. (*Id.*). The ALJ further found that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity and the ALJ addressed this period in the decision. (*Id.* at 15). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: seizure disorder, migraine headaches, anxiety, and depression (20 C.F.R. § 404.1520(c)). (*Id.*). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id*. at 15).

At step four, the ALJ found the following:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 [C.F.R. §] 404.1567(c), with limitations. She cannot climb ladders, ropes or scaffolds. She cannot be exposed to workplace hazards such as unprotected heights and operating hazardous machinery. She can understand, remember and carry out simple and low-level detailed work instructions. She can only occasionally interact with the general public.

(*Id.* at 17).

The ALJ determined that Plaintiff was unable to perform her past relevant work as a registered nurse or real estate manager. (*Id.* at 24). Through the date last insured, the ALJ considered Plaintiff's age, education, work experience, and residual functional capacity, and found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 24-26). The ALJ noted that the vocational expert identified five types of jobs that Plaintiff was able to perform, namely: (1) hospital cleaner, DOT # 323.687-010; (2) janitor, DOT # 381.687-018; (3) dishwasher, DOT # 318.687-010; (4) housekeeper, DOT # 323.687-014; and (5) office helper, DOT # 239.567-010. (*Id.* at 25).[2] The ALJ concluded that Plaintiff was not under a disability at any time from July 8, 2012, through the date of the decision. (*Id.* at 26).

**D.     Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and

---

[2] "DOT" refers to the *Dictionary of Occupational Titles*.

even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

On appeal, Plaintiff raises the following issue: Whether the ALJ erred in failing to evaluate whether Plaintiff's migraine headache condition equaled a listed impairment. (Doc. 19 at 5). Specifically, within this one issue, Plaintiff argues that the ALJ (1) erred in failing to consider whether Plaintiff's migraine headaches met a listing and (2) erred in failing to find that Plaintiff's migraine headaches met Listing 11.03. (*Id.* at 6-9).[3] Conversely, the Commissioner claims that the ALJ properly considered Plaintiff's impairments as step three of the sequential evaluation and properly found that Plaintiff's migraine headache condition did not meet or equal Listing 11.03. (Doc. 21 at 5-10). The Court addresses each of these issues in turn.

### A. Whether ALJ Considered Migraine Headache Condition at Step Three

Plaintiff asserts that the ALJ has the responsibility to determine whether Plaintiff's impairments meet or medically equaled a listing. (Doc. 19 at 5). Plaintiff also asserts that at step two, the ALJ found that Plaintiff had the severe impairment of migraine headaches, yet at step three, the ALJ found that none of Plaintiff's impairments or combination of impairments met or

---

[3] Although Plaintiff asserts in one sentence that " the ALJ was required to consider the migraines pursuant to Listing 11.02 and/or 11.03" – other than this brief mention – Plaintiff never discusses Listing 11.02. (Doc. 19 at 6). In fact, Plaintiff's entire analysis refers to Listing 11.03 only. (*Id.* at 7-9). Thus, the Court's analysis focuses on whether Plaintiff meets the requirements of Listing 11.03.

medically equaled a listing. (*Id.* at 6). Plaintiff claims that the ALJ's failure to consider whether Plaintiff's migraine headaches met or medically equaled a list was not harmless error. (*Id.*). The Commissioner argues that the ALJ is not required to specifically state which listings he considered and the ALJ's decision supports the conclusion that Plaintiff's migraine headaches did not meet or medically equal a listing. (Doc. 21 at 5).

"The Listing of Impairments describes, for each of the major body systems, impairments which are considered severe enough to prevent a person from doing any gainful activity." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 404.1525(a)). An ALJ is not required to "mechanically recite the evidence" when determining whether a plaintiff's impairments meet or medically equal any of the listings. *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986). "There may be an implied finding that a claimant does not meet a listing." *Id.* When an ALJ states that a plaintiff does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, this statement constitutes evidence that the ALJ considered the combined effects of a plaintiff's impairments. *Wilson*, 284 F.3d at 1224.

In the instant case, the ALJ's decision at step three reads in relevant part as follows:

> The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525 and 404.1526). The undersigned has carefully considered the claimant's impairments singly and in combination, and finds she has not satisfied the requirements of any listed impairments. No physician or specialist indicated the claimant's impairments met or medically equaled a listed impairment described in Appendix 1 of the Regulations (20 [C.F.R.], Subpart P, and Appendix 1). Additionally, the State agency physicians who evaluated the evidence did not find she had an impairment or combination of impairments that met or medically equaled one of the listed impairments. No subsequent evidence has been submitted that would alter the previous conclusion that the claimant does not have an impairment or combination of impairments severe enough to meet or equal a listing.

6

(Tr. at 15-16). Thus, under *Wilson* and *Hutchison*, *supra*, the ALJ's statement that he considered Plaintiff's impairments singly and in combination when determining that Plaintiff's impairments did not meet or medically equal a listing constitutes evidence that the ALJ adequately considered whether Plaintiff's impairments, including her migraine headache condition, met or medically equaled Listing 11.03. *Wilson*, 284 F.3d at 1224; *Hutchison*, 787 F.2d at 1463.[4]

In addition, the ALJ considered Plaintiff's allegations regarding her migraine headaches as well as the related medical evidence of record. (Tr. at 18-21). The ALJ noted that while Plaintiff has been diagnosed with seizure and migraine headache impairments, the evidence shows that she did not seek or receive much treatment for these impairments in the year preceding her onset date, and that her migraine headaches were controlled to a great extent by her medication without severe adverse side effects. (*Id.* at 18).

The ALJ's decision included the following summary of Plaintiff's medical evidence concerning her migraine headache condition. On Plaintiff's October 5, 2012 visit to Neuroscience and Spine Associates, Plaintiff reported that she had not had any headaches since her seizure incident. (*Id.* at 19). At that visit, Plaintiff was diagnosed with seizure and non-intractable migraine headache disorders. (*Id.*). On her October 29, 2012 visit, Plaintiff reported that she had not had any seizures since her last visit, but had some headaches that were usually nocturnal in nature. (*Id.*). At her next visit on February 18, 2013, Plaintiff reported her headaches were better. (*Id.*). At her next visit over four months later on June 25, 2013, Plaintiff

---

[4] Plaintiff asserts that courts in other districts suggest that the ALJ's failure at step three to specifically indicate that he considered Listing 11.03 is reversible error, citing *Mann v. Colvin*, 100 F. Supp. 3d 710, 720 (N.D. Iowa 2015), *Edwards v. Colvin*, No. 3:14-CV-05338-KLS, 2014 WL 7156846, at *3 (W.D. Wash. Dec. 15, 2014), and *Means v. Colvin*, No. 2:15-CV-01107-TFM, 2016 WL 3386814, at *6 (W.D. Pa. June 20, 2016). (Doc. 19 at 8). These cases, however, are not binding on this Court and are contrary to the binding precedent in *Hutchinson* and *Wilson*, cited *supra*.

reported that her medication was controlling her seizures and also controlling her daytime headaches to a great extent. (*Id.*). In that record, Plaintiff complained of occasional nausea, weakness, fatigue, and numbness. (*Id.*). Plaintiff was noted to be fully alert, oriented, pleasant, cooperative, and in no acute distress—with her appearance, cognitive functioning, and physical examination to be completely normal. (*Id.*). Plaintiff reported that she had significant nighttime headaches that were relieved to some extent by aspirin. (*Id.*). Plaintiff was prescribed additional low dose medication for her nighttime headaches to help her sleep. (*Id.*).

From July 2013 to February 2014, Plaintiff was treated at Lee County Healthcare Center/VA for her migraine headache impairment and, at these visits, Plaintiff's appearance, cognitive functioning, physical examinations, diagnosis, and treatment plan remained the same, but Plaintiff did complain of nighttime headaches and reported that she did not always take her medications as directed. (*Id.* at 20). Plaintiff visited Cleveland Clinic Neurology on March 24, 2014, and was again noted to be fully alert and oriented, to have a full affect, and intact cognitive and memory functioning with her physical examination to be completely normal from a neurological and musculoskeletal standpoint. (*Id.*). Plaintiff was diagnosed with "suspect epilepsy, not further characterized, two seizures over the past twenty-five years, mostly off medications," and analgesic rebound headaches, and insomnia. (*Id.*). Plaintiff was advised: (1) that taking too much aspirin could cause her headaches; and (2) to stop taking too much aspirin. (*Id.*). Her medications were altered to attempt to improve her headaches. (*Id.*). From March 25, 2014 to October 27, 2014, Plaintiff was treated at Lee County Healthcare Center/VA, and these records indicate that Plaintiff's mental and physical condition did not deteriorate to any significant extent. (*Id.*).

At her October 28, 2014 visit to Neuroscience and Spine Associates, Plaintiff did not complain of headaches, but did report she had "funny feelings in her head," and occasionally had migraines as well. (*Id.*). Again, Plaintiff was found to be fully alert, oriented, healthy, well-nourished, well-developed, and in no acute distress with her cognitive functioning and physical examination to be completely normal in all regards. (*Id.*). From October 29 to December 2014, Plaintiff was treated at Lee County Healthcare Center/VA, and these records indicate that her mental and physical condition had not deteriorated to any significant extent. (*Id.*). According to the evidence of record, Plaintiff had not sought or received any treatment for migraine headaches from December 2014 to the date of the decision on March 25, 2015. (*Id.* at 21). Further, Plaintiff testified that she started new medication in December 2014 and was doing better at the time of the hearing on January 26, 2015. (*Id.*).

After the ALJ summarized the evidence, he determined that "the evidence does not document the severe and disabling symptoms the claimant alleges she suffers from because of her seizure and migraine headache problems. Instead, it indicates she has relatively few symptoms or problems because of the same, and they are controlled by her medications to a great extent without severe adverse medicinal side effects, despite her allegations to the contrary." (*Id.*).

The Court considered the decision and the ALJ's thorough review of Plaintiff's medical records as they relate to her migraine headache impairment. Even though the ALJ did not specifically mention Listing 11.03 at step three, the ALJ considered the medical evidence relating to Plaintiff's migraine headache impairment and, at a minimum, impliedly determined that her impairment did not meet a listing. Accordingly, the Court finds that the ALJ considered all of Plaintiff's impairments singly and in combination at step three and did not err in failing to

9

specifically mention Plaintiff's migraine headache impairment or the evidence supporting this impairment at that step in the sequential evaluation.

### B. Whether Plaintiff's Migraine Headache Condition Met or Medically Equaled Listing 11.03

Plaintiff argues that the ALJ erred in determining that Plaintiff's migraine headache condition did not meet Listing 11.03. (Doc. 19 at 7-8). The Commissioner contends that Plaintiff failed to establish that her condition met or medically equaled Listing 11.03.

At step three – to meet the requirements of a listing – a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identifies impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled, and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). The burden is on a plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987).

To meet a listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and

laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id*. (citing 20 C.F.R. § 404.1526(a)).

As there is no specific listing for migraine headaches, the parties agree that the most analogous listing is Listing 11.03 (Epilepsy) for medical equivalence. (Doc. 19 at 7; Doc. 21 at 6).[5] Listing 11.03 provides in relevant part as follows:

> Non-convulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.03 (2014). To determine whether a plaintiff's migraine headaches medically equal Listing 11.03, the parties agree that the Commissioner considers the following factors:

- A detailed description of a typical headache event pattern, including all associated phenomena, *e.g.*, premonitory symptoms, aura, duration, intensity, accompanying symptoms, treatment.

- Occurring with a frequency of more than once weekly.

- Information about "alteration of awareness." This means a condition of being inattentive, or not cognizant of one's surroundings and external phenomena as well as

---

[5] The Commissioner notes that when the ALJ entered his decision in March 2015, Listing 11.03 (Epilepsy) was the most analogous listing for considering medical equivalence. (Doc. 21 at 6). As of September 29, 2016, the Commissioner revised the epilepsy criteria and deleted listing 11.03. (*Id.*). After this revision, the most analogous listings appear to by Listing 11.02B and 11.02D for medical equivalence. (*Id.* at 6-7 n.3). Due to the ALJ's decision here being rendered prior to the revision, the Court determines that the most analogous listing is former Listing 11.03 (Epilepsy) for medical equivalence.

- one's personal state. Many psychotropic and neuroleptic medications used for treating migraines can produce sedation, confusion, or inattention.
- It is not necessary for a person with migraine headaches to have "alteration of awareness" as long as she/he has an effect that significantly interferes with activity during the day, *e.g.*, a need for a darkened, quiet room, lying down without moving, or a sleep disturbance that impacts on daytime activities.

*See* Q&A 09-036 Rev. 1.

The Court considered all of Plaintiff's assertions in her Memorandum concerning her migraine headaches. (Doc. 19 at 5-8). Plaintiff asserts that she experiences nightly headaches. (Doc. 19 at 5; Tr. at 39, 882). Plaintiff claims that her headaches vary in strength and may start at a 4-5 and escalate to a 10 on a scale of 1 to 10, and keep her awake anywhere from 1 to 3 hours at night. (Doc. 19 at 5; Tr. at 44). Plaintiff states that she reported poor broken sleep and insomnia in July 2013. (Doc. 19 at 5; Tr. at 946). Plaintiff complained at the Cleveland Clinic Neurology Department on March 24, 2014 of daily headaches, that rate at a level of 7-8 in the morning and a 3 later in the day. (Doc. 19 at 5; Tr. at 961).

It bears repeating here that Plaintiff bears the burden of establishing that her impairment of migraine headaches meets or medically equals Listing 11.03. *Wilkinson on Behalf of Wilkinson*, 847 F.2d at 662. The Court finds that Plaintiff failed to meet her burden by failing to demonstrate that Plaintiff's migraine headaches cause an alteration of awareness or significantly interfere with her activities of daily living. Q&A 09-036 Rev. 1. Plaintiff failed to indicate what, if any, daily activities are affected by her migraine headaches.

Moreover, the ALJ exhaustively and thoroughly considered Plaintiff's daily activities. (Tr. at 22). The ALJ noted the following as to Plaintiff's daily activities. Plaintiff lives alone

and cares for her own personal needs without assistance and also cares for cats. (*Id.*). Further, Plaintiff cooks, prepares simple meals, cleans, performs, household chores, does laundry, goes outside, and exercises on a regular basis. (*Id.*). Plaintiff goes out alone, uses public transportation, drives, shops, and manages her own finances. (*Id.*). Plaintiff also reads extensively, spends several hours a day on her computer, watches television for hours at a time, and listens to classical music on the radio. (*Id.*). In addition, Plaintiff gets along with family members, friends, and others, communicates with some of them by telephone and on her computer, attends family functions, participates in support and civic groups, attends community events, and works in political campaigns. (*Id.*). Plaintiff also goes for rides, walks, hikes, out to eat, to the movies, zoo and botanical gardens, and on trips. (*Id.*). Considering the amount and breadth of Plaintiff's daily activities, the Court finds that Plaintiff failed to meet her burden to show that her migraine headaches significantly interfere with daily activities or cause an alteration of awareness. Accordingly, the Court finds that the ALJ did not err in failing to find that Plaintiff's migraine headache impairment singly or in combination with Plaintiff's other impairments met a listing.

## III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is supported by substantial evidence and decided upon proper legal standards.

**IT IS HEREBY ORDERED:**

The decision of the Commissioner is hereby **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

**DONE AND ORDERED** in Fort Myers, Florida on December 27, 2017.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record
Unrepresented Parties